UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL MARCUS GANN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UGWUEZE, et al.,<br><br>　　　　Defendants. | Case No. 1:19-cv-01350-JLT-CDB (PC)<br><br>**SECOND ORDER REGARDING PLAINTIFF'S MOTION FOR THE ATTENDANCE OF WITNESSES**<br><br>(Docs. 70, 82) |

### I.　　INTRODUCTION

In the Order Setting Pretrial Conference and Jury Trial and Associated Deadlines issued June 5, 2023, the Court provided procedures for obtaining the attendance of incarcerated witnesses and a deadline for filing a motion for the attendance of incarcerated witnesses of May 16, 2024. (Doc. 68 at 2-4.) Any opposition was to be filed by June 14, 2024. (*Id*. at 4.) That same order also provided procedures for obtaining the attendance of unincarcerated witnesses. (*Id*. at 4-5.)

On May 16, 2024, Plaintiff filed a motion seeking the attendance of four witnesses at trial: Daniel Heath Woodward, Jose Ibanez, Inmate Hochstraser, and Matthew J. Hall. (Doc. 70.) On May 20, 2024, Defendants filed a response to Plaintiff's motion. (Doc. 73.)

The Court then issued its Order Regarding Plaintiff's Motion for the Attendance of Witnesses on June 3, 2024. (Doc. 76.) The Court denied Plaintiff's motion without prejudice and

1

ordered her to file a status report by June 28, 2024, detailing her efforts to obtain access to her legal documentation, or, alternatively, to renew her motion for the attendance of witnesses to include the declarations of inmates Ibanez and Hochstraser, and if necessary, for incarcerated witness Woodward and unincarcerated witness Hall. (*Id*. at 8-9.)

On June 28, 2024, Plaintiff filed a status report, including the declarations of two of her proposed trial witnesses (Ibanez and Hochstraser). (Doc. 82.) Defendants filed a response on July 8, 2024. (Doc. 85.)

The Court now considers whether inmates Ibanez and Hochstraser shall be called as witnesses at trial. Because Plaintiff did not renew her motion as to inmate Woodward or unincarcerated witness Hall, the Court presumes Plaintiff has abandoned her efforts to have these individuals testify at trial.

**II.   DISCUSSION**

"The determination whether to issue a writ of habeas corpus *ad testificandum* rests within the sound discretion of the district court." *Cummings v. Adams*, No. CV F 03 5294 DLB, 2006 WL 449095, at *3 (E.D. Cal. Feb. 21, 2006). In determining whether to grant a motion for the attendance of incarcerated witnesses, the Court considers the following factors: (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted. *Wiggins v. County of Alameda*, 717 F.2d 466, 468 n.1 (9th Cir. 1983); *Lopez v. Cate*, No. 1:10-cv-1773-DAD-SKO (PC), 2016 WL 3940341, at *2 (E.D. Cal. July 20, 2016).

Jose Ibanez

The Ibanez declaration, dated and signed September 10, 2018, includes the following assertions:

> I met Mr. Gann[1] at CSATF, Corcoran … on "G-Yard" about 2 ½ years ago. We lived in the same building "B-1-A". Mr. Gann lived in Dorm 22-A and I lived in Dorm 23-A.

---

[1] Plaintiff has since legally changed her name to Aerith Natalia Asora.

2

> It was at his dorm where he had his accident. His cellmates had to go and tell the Correctional Officers Mr. Gann was on the ground by his bunk and he couldn't get up. So there was an alarm and the nurses showed up and he was taken in a Gurney/Plastic-Bed with straps … This accident was in late January of 2016. [1/28/2016]
>
> After this accident Mr. Gann walked with a limp and walked slow.
>
> A few months later Mr. Gann got a lot worse after we moved to the "F-Yard" *(Where he had a second accident in his new building) but I did not see this accident. He was really hurt when I saw him on the yard. After that accident, about one or two months later [5/11/2016] I was on the yard working at the recreational box … I saw Mr. Gann walking towards the clinic, he was limping badly and he could barely walk. I said "What's Up Matt [His nick-name], what's wrong do you need help? Do you want me to help you get to medical[,]" and he said "I'm like only 20, 30 feet away. Thank you." I asked him what was wrong with him and he said he had back problems and it was hard for him to walk. He kept walking, but he didn't make it to medical. He fell down and the alarm went off.
>
> Correctional Officers came to see what was wrong with him and staff from medical came to check on him and brought him back to the clinic.
>
> If there's any questions I'm willing to testify about what I saw and what I heard. …
>
> … The things I saw and heard come from my personal knowledge and experience[]. The second accident where I was not present is based upon my knowledge and belief and upon what I saw afterwards. …

(Doc. 82 at 6-7.)

Jose Manuel Ibanez, CDCR No. F94768, is presently housed at Valley State Prison and has been incarcerated since November 2007. Plaintiff previously contended Ibanez was willing to testify at trial and is an eyewitness to the seizure that injured her spine and several seizures "that occurred on the facility yard that medical was refusing to treat." (Doc. 70 at 1-2.) Defendants respond that Ibanez's declaration "was prepared for a different case in which he sued Dr. Uguweze, a defendant in this case, possibly for similar if not the same issues that he has sued Dr. Uguweze in the present case." (Doc. 85 at 3.) Defendants assert they were unaware of the state court action until presented with the Ibanez declaration. (*Id*.) Defendants state that to the extent Ibanez claims he saw Plaintiff fall and injure her back while in the yard at SATF, that "testimony

would be admissible if he so testifies." (*Id.*) Defendants further state that if Ibanez saw Plaintiff on a gurney, that testimony could be admissible if limited to Ibanez's personal knowledge and observations. (*Id.*) Defendants contend Ibanez should not be permitted to testify to falls he did not personally witness because such testimony would be inadmissible in the absence of personal knowledge and any testimony concerning what others told Ibanez would be hearsay. (*Id.*) Therefore, Defendants object to Ibanez's testimony if it lacks personal knowledge or is hearsay. (*Id.*) Lastly, Defendants state: "Inclusion of this declaration raises other issues, however, regarding res judicata that Defendants will seek leave to address." (*Id.*)

The Court begins by finding there is nothing before it to indicate that inmate witness Ibanez presents more than an average security risk. A review of the California Incarcerated Records and Information Search (CIRIS) tool indicates that inmate Ibanez remains housed at Valley State Prison; thus, it does not appear that the inmate's attendance at trial would involve extraordinary expense, nor extraordinary distance of travel. According to CIRIS, a tentative parole suitability hearing has been scheduled for October 1, 2024, for Ibanez. Given that tentative designation and the trial date of November 13, 2024, it does not appear this action can be stayed until Ibanez is released in the absence of prejudice to Plaintiff. Hence, the latter three *Wiggins* factors weigh in favor of Ibanez's attendance.

The first *Wiggins* factor—whether the inmate's presence will substantially further the resolution of the case—is at issue. To the extent Ibanez can testify from personal knowledge, as an eye or ear witness, about Plaintiff's injuries after a fall from her upper bunk and her subsequent fall on the yard on the way to medical, such testimony may further resolution of this action. However, Ibanez's potential testimony based upon his information and belief is not admissible or relevant and is hearsay.

As concerns Defendants' assertion that Ibanez's declaration raises res judicata concerns, those concerns are outside the scope of this motion. If Defendants are permitted leave to address those concerns, resolution of that issue will be separately addressed by the assigned district judge.

In sum, the Court will grant Plaintiff's motion to bring inmate Jose Ibanez to testify at the

4

trial in this action. *Wiggins*, 717 F.2d at 468 n.1; *Cummings*, 2006 WL 449095, at *3.

<u>Inmate Hochstrausser</u>

The Hochstraser declaration, dated and signed July 30, 2021, includes the following assertions:

> … This is a statement of my observations as pertains to Nathaniel Gann's back problems.
>
> I have known Mr. Gann since 2016 here at VSP. When I met him, he was using a wheeled walker device and wearing a CDCR "ADA Mobility Impaired" vest. At that time he was in a great deal of pain and his mobility and agility were indeed impaired. He had difficulty walking, bending, and lifting. I observed this both in the venues and recreation yard ("B-Yard") and in the workplace, as we were co-workers from approx. 2018 to the present.
>
> I have a particular appreciation for Mr. Gann's difficulties since I too am "ADA Mobility Impaired," and we have similar limitations.
>
> I have both witnessed in Mr. Gann's case, as well as my own, correctional staff urging and even harassing him/us to perform duties beyond the scope of our limited abilities.
>
> I have also witnessed Mr. Gann's level of pain severely increase as well as fail to improve, even post-surgery.
>
> These are my recollections and observations as they pertain to Mr. Gann's condition in the time I've known him.

(Doc. 82 at 4-5.)

Alexander Hochstraser, CDCR No. G10505, is presently incarcerated at Valley State Prison and has been incarcerated since April 2008. Plaintiff previously contended Hochstraser is willing to testify and is an eyewitness to Plaintiff's physical state following surgeries and related physical limitations. (Doc. 70 at 2.) Defendants respond that Hochstraser's declaration raises issues of relevance because none of the events causing Plaintiff's injuries here occurred while Plaintiff was housed at Valley State Prison. (Doc. 85 at 1-2.) Defendants note Hochstraser's declaration "has a different case caption and apparently was used in a separate lawsuit by Plaintiff, in which [she] complained of the treatment [she] received at VSP." (*Id.* at 2.) Defendants contend Hochstraser's proposed testimony regarding Plaintiff's treatment by correctional officers and staff at Valley State Prison is irrelevant and that allowing such testimony

5

would be unduly prejudicial to the Defendants in this action. (*Id*.) Defendants argue any testimony by Hochstraser regarding Plaintiff's mobility "raises issues of relevance and foundation." (*Id*.) Specifically, Defendants note the parties agree Plaintiff underwent a laminectomy in February 2017, that the order approving the surgery was issued months earlier, and that Plaintiff's "impairment after surgery was obvious, as it is common knowledge that recovery after spinal surgery takes at least several weeks or months." (*Id*.) Thus, because it is unclear how Hochstraser knew Plaintiff given the timing of injury and place of incarceration, Defendants object to the declaration and contend most of Hochstraser's testimony "would be directed at irrelevant, inadmissible, and possibly prejudicial evidence." (*Id*.)

Initially, the Court notes Defendants assert Hochstraser's declaration "has a different case caption and apparently was used in a separate lawsuit by Plaintiff." The Court's review of the declaration and its caption reveals no such thing. The caption on the declaration matches the caption for this action until the Court issued its Order Recaptioning Case on June 27, 2024. The Eastern District is identified, the case name and case number correlate, and there is nothing to indicate the declaration was used in another case.

Next, the Court again begins by finding there is nothing before it to indicate that inmate witness Hochstraser presents more than an average security risk. A review of the California Incarcerated Records and Information Search (CIRIS) tool indicates that inmate Hochstraser remains housed at Valley State Prison, thus it does not appear that the inmate's attendance at trial would involve extraordinary expense, nor extraordinary distance of travel. According to CIRIS, Hochstraser is not eligible for parole until February 2025 and a tentative parole suitability hearing has been scheduled for January 16, 2025. Given the trial date of November 13, 2024, and the fact Hochstraser is not eligible for release, this action cannot be stayed until this inmate witness is released in the absence of prejudice to Plaintiff. Hence, the latter three *Wiggins* factor weigh in favor of Hochstraser's attendance.

As above, the first *Wiggins* factor—whether the inmate's presence will substantially further the resolution of the case—is at issue. Despite any skepticism by Defendants that

Hochstraser would have had little interaction with Plaintiff at Valley State Prison given Plaintiff's incarceration there and her surgery in February 2017, to the extent Hochstraser has personal knowledge, as an eye or ear witness, about Plaintiff's physical limitations, such testimony may further resolution of this action. However, Hochstraser's potential testimony about "correctional staff urging and even harassing" Plaintiff is neither relevant nor admissible and would not further resolution of this case.

In sum, the Court will grant Plaintiff's motion to bring inmate Alexander Hochstraser to testify at the trial in this action. *Wiggins*, 717 F.2d at 468 n.1; *Cummings*, 2006 WL 449095, at *3.

### III.   CONCLUSION AND ORDER

Based on the above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for the attendance of witnesses Ibanez and Hochstraser (Doc. 70), considered renewed with the filing of her June 28, 2024, status report, is **GRANTED**; and

2. The Court will issue writs of habeas corpus *ad testificandum* as necessary.

IT IS SO ORDERED.

Dated:   **July 12, 2024**                                                    ␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣
UNITED STATES MAGISTRATE JUDGE