**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| AERITH NATALIA ASORA,<br><br>Plaintiff,<br><br>v.<br><br>G. UGWUEZE, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:19-cv-01350-JLT-CDB<br><br>SECOND AMENDED PRETRIAL ORDER<br><br>Deadlines:<br><br>Motions in Limine Filing: July 8, 2025<br>Oppositions to Motions in Limine: July 18, 2025<br><br>Trial Submissions: August 11, 2025<br><br>Jury trial: **August 26, 2025**, at 8:30 a.m., 3-4 days estimate |

Plaintiff brings this 42 U.S.C. § 1983 action against defendants Arietta, Hashemi, Igbinosa, Kokor and Ugwueze, with claims arising under the Eighth Amendment for deliberate indifference to serious medical needs, for medical negligence against those defendants plus defendant Pacheco, and for battery against defendant Ugwueze.

On July 15, 2024, in anticipation of a November 13, 2024 jury trial, the Court conducted a pretrial conference via Zoom videoconferencing. Plaintiff Aerith Natalia Asora appeared pro se; James W. Walter appeared as counsel for defendants. On August 21, 2024, the Court issued an amended pretrial order. (Doc. 91.) On September 30, 2024, in response to an unopposed motion from Plaintiff indicating that she anticipated undergoing major surgery, the Court continued the trial to August 26, 2025, and remanded to the assigned magistrate judge other scheduling matters, including a Defense request to re-open discovery on a limited issue. (Doc. 94.) On November 25, 2024, the magistrate

judge granted Defendants' request for discovery and denied their request to file a summary judgment motion. (Doc. 97.) Considering the above, the Court issues this second amended pretrial order.

**A. JURISDICTION/ VENUE**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction for Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367. In addition, the events that gave rise to this action occurred in Corcoran, California. Accordingly, venue is proper in the United States District Court for the Eastern District of California. *See* 28 U.S.C. § 1391.

**B. JURY TRIAL**

Defendants demanded a jury trial in this matter. (Doc. 30.) The jury trial will consist of eight jurors.

**C. UNDISPUTED FACTS**

Plaintiff identifies the following undisputed facts:

1. Plaintiff does not dispute jurisdiction.
2. Plaintiff acknowledges that defendants demanded a jury by trial, plaintiff is unaware of why there are 8 jurors and not 12 but does not contest.
3. Plaintiff has been incarcerated since July 20th, 2007, not 2009 for a murder committed on July 19th, 2007 in San Diego.
4. No dispute as to plaintiff's previous name and gender.
5. Plaintiff does not dispute being housed at CSATF in 2015-2016.
6. No dispute that plaintiff was previously housed at CSP-LAC.
7. No dispute, plaintiff was transferred to VSP and had spinal surgery.

Defendants identify the following undisputed facts:

1. Plaintiff has been incarcerated since 2009 after being convicted in San Diego County of murder.
2. Plaintiff was previously known as Nathanial Gann. Medical providers referred to Plaintiff with male pronouns prior to Plaintiff receiving gender affirmation care, unaware Plaintiff was transgender.

3. Plaintiff was housed at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California from January 2015 until December 29, 2016.
4. While at SATF, Plaintiff received medical care from the doctors and nurses named in this action, excepting Dr. Ugwueze, Chief Medical Officer at SATF, who was not involved in her day-to-day care.
5. Prior to being housed at SATF, Plaintiff was incarcerated at California State Prison, Los Angeles in Lancaster, California.
6. Medical personnel at the prison in Lancaster completed forms that listed Plaintiff's medications and diagnoses.
7. Following her incarceration at SATF, Plaintiff was transferred to Valley State Prison where she underwent a laminectomy and a discectomy of her back in February 2017.

**D. DISPUTED FACTS**

Plaintiff identifies the following disputed facts:

1. Defendant Ugwueze may not have been involved in the day-to-day care but was involved in plaintiff's medical care from 1/13/2015 when he first approved non-formulary prescription for Topamax and continued to be involved in plaintiff's care including battering plaintiff physically and involved regularly with plaintiff's medical appeals and dialogue with plaintiff's concerned friends.
2. Medical records from CSP-LAC are incomplete, hand-written and do not list all of plaintiff's medications/diagnoses (mostly illegible).
3. Plaintiff agrees that many of the items listed by defendants are considered disputed.

Defendants identify the following disputed facts:

1. Whether Plaintiff sought medical care prior to January 13, 2015, from any SATF healthcare provider.
2. Whether medication provided to Plaintiff caused her to become lightheaded and to faint on numerous occasions and to suffer allergic reactions. And relatedly, whether it caused Plaintiff to fall from her upper bunk, sustaining a frank herniation of the L4 disc in her spine and leading to surgery.

3. Whether Plaintiff was misdiagnosed with gastroesophageal reflux disease, or GERD, rather than a necrotic pancreas, causing years of suffering.

4. Whether medical records support most of Plaintiff's claims.

5. Whether Plaintiff was diagnosed with epilepsy at the prison in Lancaster.

6. Whether Plaintiff's list of allergies included any medications dispensed by SATF doctors.

7. Whether Dr. Kokor prescribed appropriate medications for asthma, hypertension, migraine headaches, and depression when Plaintiff began treatment.

8. Whether Dr. Kokor's notes reflect Plaintiff's claims of back pain before December 2016.

9. Whether Dr. Kokor's notes show Plaintiff's most common complaints were gastrointestinal related. And relatedly, whether Kokor referred Plaintiff to a gastrointestinal specialist when her complaints of stomach pain persisted.

10. Whether diagnostic testing revealed an abnormality with Plaintiff's pancreas and whether she received appropriate treatment as a result.

11. Whether a necrotic pancreas viewed on a CT scan was treated appropriately given Plaintiff's symptoms.

12. Whether Dr. Kokor provided Plaintiff with care recommended by the specialist.

13. Whether Plaintiff's subsequent care from other SATF medical staff reveals a failure to treat or failure to properly diagnose.

14. Whether Drs. Hashemi and Igbinosa acted appropriately when presented with Plaintiff's complaints of physical pain. And relatedly, whether those doctors kept accurate records.

15. Whether the medical records support Plaintiff's complaints and recollections.

16. Whether Dr. Kokor's notes reveal medical providers believed Plaintiff was lying about the cause of her injury.

17. Whether Dr. Hashemi provided Plaintiff with adequate medical care.

18. Whether Dr. Igbinosa and Nurse Pacheco refused Plaintiff medical care.

19. Whether Dr. Igbinosa accused Plaintiff of playing an April fool's joke when she complained of a fall on that date. And relatedly, whether Igbinosa continued to provide appropriate treatment for back pain.
20. Whether Nurse Arietta denied Plaintiff's requests for emergency care in July 2016.
21. Whether further care at SATF included use of a wheelchair and further referrals.
22. Whether medications provided and administered by SATF personnel accorded with Plaintiff's medication list.

**E.  DISPUTED LEGAL ISSUES**

Plaintiff identifies the following disputed legal issues:

1. Plaintiff disputes the lack of legal counsel, believing that an appointed attorney is the only way to have a fair trial.
2. Plaintiff anticipates an improper motion for dismissal based upon defendants' statement at the pretrial conference that they were going to file a motion for dismissal that is way past the eligibility date set by this court that would prejudice plaintiff.

**F.  DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE**

Plaintiff anticipates that defendants will try to introduce improper evidence from her Central File that have no relevance to the case only to prejudice the jury improperly. Further, Plaintiff believes that defendants will attempt to bring forth witnesses that have nothing to contribute to the case only confuse the jury such as medical professionals from VSP or other irrelevant testimony.

Plaintiff believes that defendants will improperly address plaintiff's conviction and term of confinement, and plaintiff intends to suppress most of that information or to press for a jointly approved statement on the issue, additionally the plaintiff anticipates filing a motion for how she is to appear in court. Specifically, so that she can dress in a manner that does not represent her as an "inmate" but rather a human being. **The Court advises Plaintiff that if she wishes to appear in "street clothes," she must arrange to have the clothes provided to the U.S. Marshal Service in advance of the trial. She must contact the U.S. Marshal Service to determine their procedures as to how and when the clothes are to be provided**.

Defendants state they anticipate Plaintiff will attempt to introduce documentary evidence that

would be inadmissible due to hearsay and other objections. Defendants further anticipate issues concerning the introduction of character evidence, or evidence concerning defendants' care provided to other inmates, leading to objections of improper character evidence, relevance, and a lack of foundation. Defendants also anticipate issues concerning the standard of care and statements purportedly made to Plaintiff by non-witnesses. Defendants anticipate the issues can be addressed by motion in limine.

Both parties intend to file motions in limine regarding the evidence to be used at trial. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id*. The court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.

**<u>In advance of filing any motion in limine, the parties SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. Along with their motions in limine, the parties SHALL file a certification demonstrating the parties have in good faith met and conferred and attempted to resolve the dispute. Failure to provide the certification may result in the court refusing to entertain the motion.</u>**

Any motions in limine must be filed with the court no later than **July 8, 2025**. The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party and filed with the court no later than **July 11, 2025**. The Court will not set a hearing on the motions in limine unless, after receiving the motions, it appears a hearing is needed.

**G. SPECIAL FACTUAL INFORMATION**

Defendants identify (1) the date, place, and general nature of the incident, and (2) plaintiff's

age and the injuries sustained, as special factual information in this action.

**H.  RELIEF SOUGHT**

   **Plaintiff**

Plaintiff seeks money damages. In her First Amended Complaint, plaintiff seeks: "General damages in the amount of $3,200,000. Special Damages for loss of earning capacity and future medical costs, compensatory damages in the amount of $5,000,000 for pain and suffering and emotional, psychological, spiritual distress, legal fees, and puntative [sic] damages in the amount of $250,000.00 from each defendant."

Plaintiff contends that defendants do not have any costs associated with this litigation, as the Attorney General's Office is handling the litigation, further plaintiff's stay at CDCR is expected to end in November of 2026 or earlier as she has met the Board of Parole Hearing requirements given her at her consultation (and has 180 day pending credit for more good time). Therefore, defendants are wrong about plaintiff's future earnings as well as medical care to be provided, i.e. plaintiff is in need of a second surgery at least, that CDCR cancelled and she will have to pursue after release, enduring additional pain as well as economic damages.

   **Defendants**

Defendants seek judgment in their favor and an award of costs. On the other hand, defendants assert that plaintiff "has no bills to pay for the care that was provided to her by CDCR. She further has no wage loss claim. Her general or noneconomic damages are the only damages she may recover."

**I.  ABANDONED ISSUES**

None.

**J.  WITNESSES**

1. The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiff's Witnesses**

1. Jose Ibanez
2. Alexander Hochstraser
3. Matthew Hall
4. Mitchell Khan[1]
5. Pamela Cipriottii
6. Anthony Hales, N.P.
7. Chander P. Malhotra
8. Harold D. Segal
9. R. Scharffenberg
10. Plaintiff

**Defendants' Witnesses**[2]

1. Catherine Arrieta, R.N., retired
2. Ranier Bansuan, M.D., Valley State Prison
3. Harpreet Gil, Valley State Prison
4. Nastran Hashemi, M.D., SATF
5. Ngozi Igbinosa, M.D., SATF
6. Teresa Jamison, L.V.N., Valley State Prison
7. Winfred Kokor, M.D., SATF
8. Michelle Pacheco, R.N., SATF
9. Katherine Pena, L.V.N., Valley State Prison
10. C. Stronach, R.N., SATF

---

[1] The Court has ruled on Plaintiff's motion (Doc. 70; Doc. 86) for attendance of incarcerated witnesses (Doc. 76). The Court granted the motion as to Alexander Hochstraser and Jose Manuel Ibanez, but denied it as to two others, including Mathew Hall, because they were not in the custody of the CDCR. Plaintiff did not seek to have Mitchell Kahn testify at trial (Doc. 70), so he will not be ordered to appear. Plaintiff may have unincarcerated people testify at trial if they agree to do so voluntarily. The Court previously advised Plaintiff as to how to have subpoenas issued. This procedure was set forth in the Court's order issued on June 5, 2023. (Doc. 68 at 4-5). She did not complete this procedure.

[2] Plaintiff objects to defendants' witnesses for various reasons. However, objections to witnesses may be made by filing motions in limine or at the time of trial.

      11. Godwin Ugwueze, C.M.E., SATF

12. LaKenya Walls, L.V.N., Valley State Prison

2. **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

b. The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

3. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

a. The witness could not reasonably have been discovered prior to the discovery cutoff;

b. The court and opposing parties were promptly notified upon discovery of the witness;

c. If time permitted, the party proffered the witness for deposition; and

d. If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

**K. EXHIBITS, SCHEDULES, AND SUMMARIES**

NO EXHIBIT, OTHER THAN THOSE LISTED IN ATTACHMENTS A-C, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

1. **For a party to use an undisclosed exhibit for any purpose, they must meet the following criteria**:

a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

b. The exhibit was discovered after the issuance of this order and the proffering party

makes the showing required in paragraph 2, below.

2. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

a. The exhibits could not reasonably have been discovered earlier;

b. The court and the opposing parties were promptly informed of their existence; and

c. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

**<u>Plaintiff's Exhibits</u>**

1. Plaintiff's Medical Records from 7-15-2014 to 6-13-2016 (Excerpts)
2. Plaintiff's Medical Records from 7-1-2016 to 12-29-2016 (Excerpts)
3. Plaintiff's Medical Records from· 12-29-2016 to 2-8-2017 (Excerpts)
4. Plaintiff's Medical Records from 2-12-2017 to 2-16-2017 (Excerpts)
5. Plaintiff's Medical Records from 2-17-2017 to 8-8-2017 (Excerpts)
6. Statements from Plaintiff's Witnesses.
7. Admissions and Document Request Responses from defendants.
8. Inmate Appeals filed by Plaintiff and responses (Excerpts).
9. Inmate Accommodation Requests (ADA/RAP reports) filed by Plaintiff (Ex. Excerpts)
10. Prison law Office Correspondence and Filings (Excerpts)
11. California DGS (Claims) Filings and Responses (Excerpts).
12. CDCR-0022 Forms and Responses (Excerpts)
13. Plaintiff's Psychological Records (Excerpts Only)

**<u>Defendants' Exhibits</u>**

A. Plaintiff's medical records from CSP Los Angeles (Lancaster).

B. Plaintiff's medical records from SATF.

C. Plaintiff's medical records from Valley State Prison.

D. Plaintiff's medical records from the California Men's Colony.

    E. Plaintiff's inmate appeals (CDCR form 602) for medical care and the respective responses to the appeals.

F. Plaintiff's CDCR Central File.

The parties must exchange exhibits no later than **July 29, 2025.** On or before July 29, 2025, 2024, the parties **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examine each other's exhibits. Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by the above exhibit exchange deadline.

1. At the exhibit conference, the parties will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, the parties must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference.

2. At the conference, the parties shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF JOINT EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|
|  |  |  |

3.  As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party. Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.  Each exhibit binder shall contain an index which is placed in the binder before the exhibits. Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OBJECTION OTHER |
|---|---|---|---|---|
|  |  |  |  |  |

5.  On the index, as to exhibits to which the only objection is a lack of foundation, the parties will place a mark under the column heading entitled "Objection Foundation."

6.  On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, the parties will place a mark under the column heading entitled "Other Objections."

7.  As to each exhibit which is not objected to in the index, it shall be marked and received into evidence and will require no further foundation.

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four complete, legible sets of exhibits. The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **August 21, 2025**. The parties **SHALL** determine which of them will also provide three sets of the joint exhibits to the

Courtroom Clerk.[3]

7. The Parties **SHALL** number each page of any exhibit exceeding one page in length.

**L.   POST-TRIAL EXHIBIT RETENTION**

Counsel for the Defense **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case and **SHALL** retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

**M.   DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

**Plaintiff's Documents**

All the discovery documents provided during the discovery process at trial, from each and every defendant.

**Defendants' Documents**

None, except Plaintiff's deposition testimony may be offered for impeachment purposes.

**N.   FURTHER DISCOVERY OR MOTIONS**

After the pretrial conference held July 15, 2024, Defendants were permitted to conduct limited additional discovery. (Doc. 97.) The deadline for doing so was April 21, 2025. To the extent the parties have identified additional exhibits or witnesses because of additional or new discovery, the parties may inform the court of that additional information in their objections.

**O.   STIPULATIONS**

Defendants do not believe any stipulations would be beneficial for trial.

---

[3] In a case where an incarcerated plaintiff is proceeding *pro se*, the Defense shall prepare and provide the binders to the Court unless the Court orders otherwise. In addition, for ease of reference during trial, the Court prefers that the parties distinguish between the various sets of exhibits (joint, Plaintiff, Defense) by using differently colored binders.

Plaintiff believes that stipulations could reduce the amount of information that the jury needs to consider making the deliberation process quicker as well as the trial itself. Stipulations for example as to the injury, the treatment, surgery, after-care, etc. are some examples that may benefit the trial.

**P.     AMENDMENTS/ DISMISSALS**

Defendants do not anticipate any amendments of pleadings.

Defendants request Plaintiff dismiss Dr. Ugwueze because she was not one of Plaintiff's treating physicians and her only connection to this case involves her approving one of Plaintiff's 602 requests for additional care.

Plaintiff objects to the dismissal of Ugwueze as a defendant because he was the cornerstone of plaintiff's care, dealt with plaintiff's contacts outside of prison, approved medications that plaintiff was allergic to, and battered plaintiff in front of NP Anthony Hales.

**Q.     SETTLEMENT NEGOTIATIONS**

Defendants indicate settlement was unsuccessful at an early settlement conference and that Plaintiff's demand was much higher than they were willing to pay to resolve the matter. Plaintiff indicates her willingness to settle but seems to agree that the amount the defense previously offered is insufficient.

**R.     AGREED STATEMENT**

Defendants do not believe the parties could agree to any agreed statement.

Plaintiff believes that an agreed upon statement could be issued, but she does not propose one.

**S.     SEPARATE TRIAL OF ISSUES**

Defendants indicate the three-to-four-day trial estimate is too short to warrant a separate trial.

Plaintiff believes that a separate trial of issues would benefit the jury significantly in that the medical issues are complex and the evidence overwhelming. The court disagrees. The information shared thus far with the court does not demonstrate any true complexity and the amount of evidence appears fairly minimal.

**T.     APPOINTMENT OF IMPARTIAL EXPERTS**

Plaintiff requests an appointed medical specialist to testify as to the medical records and procedures as well as the standard of care. Plaintiff has failed to demonstrate that appointment of an

expert is needed at this time. However, she may file a formal motion seeking the appointment of an impartial expert within the deadlines set forth above for motions in limine. In the meanwhile, Plaintiff is advised of the standards for appointment of an expert.

Federal Rule of Evidence 706 allows a court to appoint an expert witness on the motion of a party. Fed. R. Evid. 706(a). The Court may appoint an expert witness when it will assist the trier of fact to decide a fact at issue or understand evidence that is scientific, technical, or requires specialized knowledge. *Arellano Jr. v. Hodge*, 2017 WL 2692875, at *1 (S.D. Cal. Jun. 22, 2017) (citations and quotations omitted). "Expert witnesses should not be appointed where they are not necessary or significantly useful for the trier of fact to comprehend a material issue in a case." *Id.* (citing *Gorton v. Todd*, 793 F.Supp.2d 1171, 1181 (E.D. Cal. 2011)). "[E]pert witnesses should not be appointed to serve as an advocate for a party." Id. (citations omitted). Finally, "Rule 706 is not a means to avoid the in forma pauperis statute, 28 U.S.C. § 1915, and its prohibition against using public funds to pay the expenses of witnesses in a § 1983 prisoner rights action." *Id.* (citing *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993)).

For plaintiff to prevail on her Eighth Amendment claim, she must demonstrate that defendants acted with deliberate indifference to her serious medical needs. *Arellano*, at *1 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1983)). The issue in a deliberate medical indifference claim "does not demand that the jury consider complex questions concerning medical diagnosis and judgment." *Id.* (citing *Torbert v. Gore*, 2016 WL 3460262, at *2 (S.D. Cal. Jun. 23, 2016)) (quoting *Levi v. Dir. Of Corr.*, 2006 WL 845733, at *1 (E.D. Cal. Mar. 31, 2006)). "Rather, the jury will need to consider the prison official's subjective knowledge of any risks to Plaintiff's health." *Id.* (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2002)). Finally, "the determination of whether Plaintiff's medical needs were sufficiently "serious" to amount to an Eighth Amendment violation may depend on Plaintiff's testimony regarding the extent of her injuries and how her injuries impacted her daily life. *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and

substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.")). "The assistance of an expert witness would be unnecessary under these circumstances." *Id*.

On the other hand, the nature of the allegations indicates that if plaintiff succeeds on her Eighth Amendment claim, she will also succeed on his negligence claims. The reverse, however, is not true. On the other hand, the defense is prepared to present an expert who will testify, presumably, as to the standard of care.

Finally, under 28 U.S.C. § 1915, federal courts may permit an indigent party to file suit without prepaying fees and costs. The statute does not authorize courts to subsidize expert fees, however. *Hadsell v. IRS*, 107 F.3d 750, 752 (9th Cir.1997) (relying on *Tedder v. Odel*, 890 F.2d 210, 211–12 (9th Cir.1989) (per curiam)). Rather, an expert may be appointed only if it will help the jury understand the issues; it is not for the purpose of having the expert act as an advocate for any party.

Further plaintiff is struggling with getting access to witnesses in particular that are unincarcerated. Plaintiff requests again the appointment of counsel so that the witnesses can be located and contacted to see if they are willing to testify. **The Court has previously denied plaintiff's request for appointment of counsel (Doc. 38, Doc. 75). The Court again denies the request for appointment of counsel for the reasons set forth previously. (Docs. 83, 75.)**

**U. ATTORNEYS' FEES**

Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

Defendants reserve their right to seek attorney's fees but indicate they will waive costs and fees should plaintiff dismiss this action.

**V. TRIAL DATE/ ESTIMATED LENGTH OF TRIAL/TRIAL SCHEDULE**

Jury trial is set for **August 26, 2025**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California. Trial is expected to last three to four days.

**The parties are are advised that the Court's trial schedule, absent other Court conflicts, is as follows:** For the first day of trial and until jury selection is completed, the trial day will begin at 8:30 a.m.

and complete around 4:30 p.m. with an hour-long lunch break. Otherwise, until the jury begins deliberating, the trial day will begin at 8:00 a.m. and complete at 1:30 p.m. with no lunch break, though the trial will break for two breaks during the trial day. Once the jury begins deliberating, the jury will set their own schedule. In addition, should the trial proceed past the first week, **trial will not convene on any Monday**.

**W. TRIAL PREPARATION AND SUBMISSIONS**

**1. Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and must file the brief on or before **August 11, 2025**.

**2. Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **August 11, 2025**.

**3. Jury Instructions & Verdict Form**

The defense **SHALL** serve their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form so that it is received by the plaintiff no later than **July 28, 2025**. The parties shall conduct a conference to address the proposed jury instructions and verdict form no later than **August 5, 2025**. **If the plaintiff wishes to propose additional instructions or a different verdict form, she SHALL identify them/provide them to the defense at the time of the conference**.[4] At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **August 11, 2025**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable, and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed

---

[4] The defense SHALL arrange with the Litigation Coordinator so that the plaintiff can provide copies of any modified or original instructions and a copy of the plaintiff's verdict form, if any, to the Litigation Coordinator, at the time of the conference. If the plaintiff seeks to use model instructions, the plaintiff may provide orally the model instruction number.

(disputed) jury instructions and proposed (disputed) verdict form no later than **August 11, 2025,** and identify such as the disputed jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible. All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, Plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction. Each instruction **SHALL** be numbered.

**X. OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 14 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Each party is also granted 7 days thereafter to respond to the other party's objections. Such objections shall clearly specify the requested modifications, corrections, additions, or deletions.[5] If no objections are filed, the order will become final without further order of this court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

**Y. MISCELLANEOUS MATTERS**

Defendants request the court instruct the jury as to Plaintiff's gender identity and further explain that most exhibits will refer to Plaintiff with male pronouns because her gender identity was unknown to all defendants in this action. Defendants indicate Plaintiff informed CDCR officials she was transgendered after she transferred from SATF. Defendants request the court and Plaintiff's grace as one or more of the witnesses may inadvertently refer to Plaintiff by her former name and gender.

---

[5] As mentioned above, to the extent the parties have identified additional exhibits or witnesses because of additional or new discovery, the parties may inform the court of that additional information in their objections. If they fail to do so, additional exhibits and witnesses **will not be permitted**.

Defendants assert they, their witnesses, and defense counsel will make every effort to properly refer to Plaintiff as female, but mistakes may occur as all medical records do not reflect Plaintiff's name or gender.

Plaintiff wishes to review any such instruction to the jury regarding the plaintiff's gender identity - further that jurors that show a prejudice to transgender people be excluded for cause from participating in the trial. Further, in the perfect world, the plaintiff would, ask that the jury not be aware of her transition from male to female and know her as a female.

Plaintiff realizes that she does not live in such a world and that cannot be achieved since her transition (social and physical) from male to female occurred close to the date and time of these incidents (several years later, but in terms of the litigation during).

With all the facts considered plaintiff understands that mistakes can be made but asks that the should consistent mis-gendering or mis-naming occur (emphasis on the mis-gendering though) that the witness be admonished and the jury receive instruction to discredit their testimony the more they do it, that the jury be allowed to consider the persistent mis-gendering as evidence of their lack of credibility and or their dehumanization of plaintiff.

**Z. COMPLIANCE**

Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated: **April 22, 2025**

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE